Vivian ORR, Petitioner-Appellant,

v.

Dale McNAIR, d/b/a McNair Plumbing, Inc., and Milwaukee Mutual Insurance Co., Respondents-Appellees.

No. 85–362.

Court of Appeals of Iowa.

Feb. 26, 1986.

Dennis L. Hanssen and E.J. Kelly, of Hopkins & Huebner, P.C., Des Moines, for petitioner-appellant.

Roger L. Ferris and Sara J. Sersland, of Nyemaster, Goode, McLaughlin, Emery & O'Brien, and Ann Fitzgibbons of Scalise, Scism, Sandre & Uhl, Des Moines, for respondents-appellees.

Heard by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

SNELL, Judge.

McNair Plumbing, Inc. was incorporated in Iowa in 1976. David McNair and his wife are the sole shareholders, officers, and directors of the corporation. The business was operated out of the McNairs' home in Van Meter, Iowa. Until 1981, McNair Inc.'s business consisted of installing exterior residential water and sewer pipes in the Iowa counties surrounding Van Meter. Because of the depressed Iowa economy, in February of 1981 McNair went to Elk City, Oklahoma to find work for his company. He left his brother in charge of the work already in progress in Iowa. In September of 1981, all of McNair Inc.'s work in Iowa was completed. No projects were commenced in Iowa after this time. McNair estimated that he subcontracted twenty to thirty projects in Elk City for at least six different contractors during the summer of 1981. McNair traveled back to Iowa several times during that summer. He transported all of his business vehicles to Elk City including his Caterpillar tractor, backhoe, pickup truck, track hoe, and trencher. McNair purchased approximately six acres of real estate in Elk City upon which he and his employees parked their mobile homes and stored equipment. A business office was established in the McNair mobile home. In August of 1981, McNair's family moved to Elk City. They rented their home in Van Meter to another individual. McNair testified that initially he did not intend the move to Oklahoma to be a permanent one.

In 1981, Hal Orr also left Iowa to search for work. Orr worked in Wellington, Kansas, from April to July of 1981. He then traveled to Oklahoma. His wife remained on their farm in Winterset, Iowa. In August of 1981, in Elk City, Orr met McNair and entered into an oral agreement to operate excavating equipment for McNair Inc. Orr worked on five different jobs in Oklahoma for McNair Inc. These jobs consisted of backfilling a water line, cleaning out trash, leveling a pad for a mobile home, tapping a water main, and bulldozing. On October 22, 1981, Orr started a job that was projected to last four or five months. On that day, Orr was crushed to death while bulldozing trees.

Orr had returned to Iowa on two occasions during the late summer of 1981. His first trip was to purchase a mobile home for his residence in Oklahoma. His second trip was to attend the Covered Bridge Festival in Winterset. During these trips, Orr looked for a piece of equipment McNair needed for his business in Oklahoma and also prepared the last of McNair's equipment for transport to Oklahoma. Orr was not compensated for these trips by McNair Inc.

A retailer's sales tax quarterly return for the Iowa Department of Revenue for the quarter ending September 30, 1981, contains the question: "Have you gone out of business? If so, attach sales tax permit and give last date of business." McNair Inc. filed a written response to this question answering, "Yes 9/1/81."

The quarterly reports to the Iowa Department of Job Service and the Oklahoma Security Commission show first quarter 1981 wages by McNair Inc. in Iowa of $4,010; second quarter 1981 wages in Iowa

of $5,108; third quarter 1981 wages in Iowa of $1,593 and wages of $15,142.36 in Oklahoma; and fourth quarter 1981 wages of $15,343.50 in Oklahoma. No Iowa taxes were withheld in the last quarter for October, November, and December and $442.96 were withheld in Oklahoma.

The corporation filed its income tax returns for fiscal 1981–82 (November 1, 1980 through October 31, 1981) using its Elk City address. It states business began in Oklahoma April 1, 1981. The Iowa and Oklahoma federal personal income tax returns for McNair also give an Elk City, Oklahoma address for the taxpayer. The Oklahoma return for McNair's personal income taxes reflects the Elk City address.

The paychecks to decedent had the employer's Elk City address on them. 1981 licenses for McNair's vehicles were ordered from Iowa. The next set for 1982 came from Oklahoma where the eleven vehicles were located. McNair testified that his vehicles were never registered in Iowa again.

In 1976, McNair purchased a workers' compensation insurance policy from Milwaukee Mutual which remained in effect on the date of Orr's death. This policy only provided coverage under the Iowa Act. McNair's agent, Fletcher Jennings, advised Milwaukee Mutual in July of 1981 that McNair would temporarily be in Oklahoma. However, the policy was never extended to provide coverage under the Oklahoma Workers Compensation Act. Until 1982, McNair paid and Milwaukee Mutual accepted the premiums for this policy. In 1982, the policy was cancelled.

Petitioner Vivian Orr is the wife of decedent Hal Orr. She filed a petition before the Iowa Industrial Commissioner in May of 1982 seeking workers' compensation benefits for her husband's death. The deputy industrial commissioner found that the Iowa Workers' Compensation Act did not apply in this case.

The commissioner concluded that since McNair Inc. had moved to Oklahoma, the meaningful relationship between decedent's domicile in Iowa and the employer-employee relationship was negated. He determined that 1981 was a year of closing down one operation and opening another. The commissioner also stated that since the only issue in this matter involved the applicability of the Workers' Compensation Act, no determination as to the admission of exhibits relating to a dispute in insurance coverage was necessary. The commissioner, in addition, stated that a determination as to whether the insurance carrier should be estopped from denying Iowa jurisdiction and coverage under its policy was not relevant. The commissioner further concluded that no reasonable construction of Iowa Code section 85.71 could support petitioner's case. Therefore, the commissioner held that Vivian Orr was not entitled to benefits since the Iowa Workers' Compensation Act could not be applied to decedent's injury in Oklahoma.

Mrs. Orr filed a petition for judicial review, asserting, in part, that the commissioner's decision was in error. The district court affirmed the commissioner's denial of benefits under section 85.71(1) for lack of subject matter jurisdiction. On appeal from the district court's decision, Mrs. Orr now asserts that the industrial commissioner erroneously determined that the Iowa Workers' Compensation Act did not apply to decedent's injury which occurred outside the state.

The Iowa Supreme Court, in *Beier Glass Co. v. Brundige*, 329 N.W.2d 280, 282 (Iowa 1983), summarized our scope of review in workers' compensation cases as follows:

> Our scope of review is limited by Iowa Code sections 17A.19 and .20. The commissioner's findings have the effect of a jury verdict, and we broadly apply them to uphold his decision. *Ward v. Iowa Department of Transportation*, 304 N.W.2d 236, 237–38 (Iowa 1981). The commissioner's determination of a question of law is entitled to careful consideration, but is subject to our review. *Id.* at 238; *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 907 (Iowa 1976). We have a duty to correct the district court's

errors of law as well. *Foods, Inc. v. Iowa Civil Rights Commission,* 318 N.W.2d 162, 165 (Iowa 1982); *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429 (Iowa 1979); Iowa R.App. P. 4.

■ The application of any given state's workers' compensation act to injuries suffered outside the state depends on the language and policy of its statutes. *George H. Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 499 (Iowa 1983). Iowa Code section 85.71 (1983) establishes when an employee working outside of Iowa may recover benefits under Iowa's Workers' Compensation Act:

## EXTRATERRITORIAL EMPLOYMENT

**85.71 Employment outside of state.**

If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee, or in the event of death, the employee's dependents, would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employee, or in the event of death resulting from such injury, the employee's dependents, shall be entitled to the benefits provided by this chapter, provided that at the time of such injury:

1. The employment is principally localized in this state, that is, the employee's employer has a place of business in this or some other state and the employee regularly works in this state, or if the employee is domiciled in this state, or

2. The employee is working under a contract of hire made in this state in employment not principally localized in any state, or

3. The employee is working under a contract of hire made in this state in employment principally localized in another state, whose workers' compensation law is not applicable to the employee's employer, or

4. The employee is working under a contract of hire made in this state for employment outside the United States.

"If the circumstances of an employee's out-of-state injury fall outside each of the four subsections of section 85.71, no Iowa recovery will be permitted." *Wentz,* 337 N.W.2d at 500.

Subsections two through four of this statute apply only where the employee is working under a contract of hire made in Iowa. In the case at bar, it is undisputed that Orr's contract of hire was made in Oklahoma. Consequently, the sole issue we face is whether subsection 85.71(1) will afford coverage under the Act.

The Iowa Supreme Court has had two recent opportunities to interpret section 85.71 and both cases involved the application of subsection one. In *Iowa Beef Processors, Inc. v. Miller,* 312 N.W.2d 530 (Iowa 1981), the workers' compensation claimant responded to an advertisement in a Sioux City newspaper placed by Iowa Beef Processors, Inc. (hereinafter IBP). IBP is a Delaware corporation and has its principal place of business in Dakota City, Nebraska and is licensed to do business in Iowa. The claimant applied for the job in Nebraska, performed all of her job-related duties in Nebraska, and was injured during the course of those duties in Nebraska. However, the claimant's domicile at all pertinent times was in Iowa. After receiving benefits under the Nebraska Workmen's Compensation Act, the claimant filed a petition for benefits under the Iowa Workers' Compensation Act. The court held that "domicile in Iowa alone is not sufficient to entitle an employee who has sustained an injury outside the state to benefits provided by the Iowa Workers' Compensation Act. There must be some meaningful connection between domicile and the employer-employee relationship." *Id.* at 534. The court concluded that no meaningful link existed between this claimant's domicile in Iowa and her employment relationship with IBP. The fact that the claimant responded to an employment advertisement in an Iowa newspaper did not materially relate to her employment and, therefore, was found insufficient to supply the necessary connection. *Id.*

The court, in making its decision, cited the enacting clause of section 85.71(1) which provides benefits for an employee whose employment is "principally localized" in Iowa. The court found that the plain meaning of this clause "indicates that the employee must perform the primary portion of his services for the employer within the territorial boundaries of the State of Iowa or that such services be attributable to the employer's business in this state." *Id.* at 533.

*Wentz* involved a Nebraska corporation which had a job site in Sioux Falls, South Dakota. The workers' compensation claimant, an Iowa domicilary, learned of a job opening at the South Dakota job site through his local union business agent. Claimant applied for the job in South Dakota, worked only at the employer's South Dakota job site, and was injured while working there. The claimant filed for benefits under Iowa's Act. The court found that subject matter jurisdiction was lacking. The court explained that the primary focus of section 85.71(1) "is on the jurisdiction where the employee's employment is 'principally localized.'" *Wentz,* 337 N.W.2d at 500. The court found that claimant's employment, if localized anywhere, was localized in South Dakota where his employer maintained a job site and claimant performed his employment duties. *Id.* at 501. The court continued,

Claimant's referral by his local union in this case was no more materially related to his employer-employee relationship than the newspaper advertisement in *Iowa Beef Processors, Inc.* In neither instance were the employees' services attributable to business transacted in this state, nor was any portion of the employee's services performed here. We hold claimant's employment was not principally localized in Iowa and the commissioner lacked subject matter jurisdiction to award claimant Iowa workers' compensation benefits under the provisions of section 85.71(1).

*Id.* at 502.

In the case at bar, we, then, must determine whether a meaningful relationship ex-

isted between Orr's Iowa domicile and his employment with McNair Inc. Our focus is on the employer-employee relationship and whether this relation existed within Iowa's boundaries.

Orr applied for a job to operate excavating equipment and was hired in Oklahoma. He operated excavating equipment solely in Oklahoma on job sites maintained by McNair Inc. He was crushed to death in Oklahoma in the course of his employment duties for McNair Inc. We conclude that the employer-employee relation between McNair Inc. and Orr was established in Oklahoma and, therefore, Orr's employment was "principally localized" there. None of Orr's services were attributable to any of McNair Inc.'s business transacted in Iowa. On two occasions Orr did assist his employer in transporting equipment from Iowa to Oklahoma. However, he was not compensated for those tasks and those were not the services for which he was hired by McNair Inc. Therefore, we find no meaningful connection between Orr's domicile and the employer-employee relationship in this case.

█ Vivian Orr also contends that the insurance carrier should be estopped for denying coverage. Because subject matter jurisdiction is lacking, we find that the commissioner did not err in failing to address the issue of insurance coverage.

AFFIRMED.